Jessica L. Mackaness (SBN 272805)
jmackaness@mackdeta.com
Erik M. Ideta (SBN 259533)
eideta@mackdeta.com
MACKANESS & IDETA, LLP
3702 4th Ave., 2nd Floor
San Diego, CA 92103
Telephone: (619) 359-8700
Facsimile: (619) 359-8719

*Attorneys for Plaintiffs Jackie Lewis and Ryan Goldenhar*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE LEWIS, an individual, and RYAN GOLDENHAR, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A., a corporation, <br><br> Defendant. | Case No. **'19CV0203 JLS AGS** <br><br> **COMPLAINT** |

1. Plaintiffs Jacqueline Lewis ("Lewis") and Ryan Goldenhar ("Goldenhar") (collectively, "Plaintiffs") hereby complain and allege against Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") as follows:

**THE PARTIES**

2. Plaintiff Jacqueline Lewis is a FINRA registered representative. Lewis was employed as a senior vice president and wealth advisor with Wells Fargo's Private Bank in San Diego, California from 2004 through January 28, 2019, when she resigned and voluntarily terminated her affiliation with Wells Fargo. While employed at Wells Fargo, Lewis's FINRA license was registered with Wells Fargo's brokerage arm, Wells Fargo Clearing Services, LLC (now doing business as Wells Fargo Advisors). Lewis is in the process of transitioning her FINRA license and registration to AdvicePeriod, an SEC-registered investment advisory firm. Lewis is a California resident who resides in San Diego County.

3. Plaintiff Ryan Goldenhar is a wealth manager and investment strategist, and is not registered with FINRA. Goldenhar was employed as a senior vice president and senior portfolio manager with Wells Fargo's Private Bank in San Diego from 2006 to January 28, 2019, when he resigned and voluntarily terminated his affiliation with Wells Fargo. Goldenhar is in the process of transitioning his employment to AdvicePeriod. Goldenhar is a California resident who resides in San Diego County.

4. Defendant Wells Fargo Bank, N.A. is, and at all times mentioned herein was, a corporation organized and existing under the laws of the United States, with its principal place of business in San Francisco, California. Wells Fargo Bank, N.A. is the primary U.S. operating subsidiary of Wells Fargo & Company, an American multinational banking and financial services holding company with operations around the world.

**JURISDICTION AND VENUE**

5. The court has jurisdiction over this matter under 28 U.S.C. § 1331. Plaintiffs' claim for declaratory relief arises, in part, under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, as Plaintiffs seek a declaration that they did not violate the DTSA; that Defendant otherwise has no valid claims against Plaintiffs

under that statute; and that Defendant has no basis to obtain temporary injunctive relief, permanent injunctive relief, or other relief against them.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because Defendant actively and regularly conducts business in this district and a substantial portion of the events and/or omissions giving rise to Plaintiffs' claims occurred in this district. Among other things, Plaintiffs were employed by Defendant in this judicial district, and entered into employment agreements with Defendant in this judicial district.

# FACTUAL BACKGROUND

*Background*

7. Plaintiffs Lewis and Goldenhar are highly experienced wealth management advisers who have over 50 combined years of experience in the financial services industry.

8. Prior to joining Wells Fargo, Lewis worked at JP Morgan Private Bank in New York and Los Angeles. She joined Wells Fargo in 2004 and transitioned a substantial book of business into the firm. In 2007, shortly after Goldenhar joined Wells Fargo, Lewis and Goldenhar began working together as a wealth management team. In the years that followed, Lewis and Goldenhar worked tirelessly to serve their existing clients and further grow their business.

*Protocol for Broker Recruiting*

9. For a majority of Lewis's employment with Wells Fargo, the firm's brokerage arm, Wells Fargo Advisors, was a member of the Protocol for Broker Recruiting (the "Protocol"). The Protocol is an agreement among participating firms that allows financial advisers who transition from one Protocol member firm to another to take certain client information, including client names, addresses, account titles, email addresses, and phone numbers ("Protocol Information"), with them without the threat of litigation. The transitioning adviser may then use that information to contact clients as long as the terms and conditions of the Protocol have been met.

10. The Protocol was born out of an avalanche of "trade secret" litigation between the largest Wall Street firms, including Morgan Stanley, Smith Barney, Merrill Lynch, and UBS, in the 1990s through the early 2000s. When an adviser would leave one firm to join another, the prior firm would routinely file for a temporary restraining order or other emergency injunctive relief, claiming, among other things, that the basic client information to which the adviser had access during his or her employment constituted highly confidential, legally protected trade secrets. Firms would argue the client relationship belonged to the firm and that client contact information was a legally protected "trade secret." In seeking—and routinely obtaining—emergency injunctive relief, the departed firm's goal was to block the adviser's transition to the new firm or, at a minimum, buy time to convince clients not to move. That same firm, of course, would take the opposite position when recruiting new advisers and encourage them to transition their clients and assets into the firm.

11. Recognizing the absurdity of the situation, and seeking to reign in ballooning legal costs, Smith Barney, Merrill Lynch, and UBS formed the Protocol in 2004. Wachovia Securities (now Wells Fargo Advisors) followed suit and joined the Protocol in 2006.

12. There are now more than 1,800 Protocol members, including FINRA broker-dealers and SEC and state regulated Registered Investment Adviser firms. Plaintiffs' new employer, AdvicePeriod, has been a member of the Protocol since October 17, 2016.

13. The purpose of the Protocol was for firms to put client needs ahead of their own and allow financial advisers the freedom to move from one firm to another. According to the Protocol, its "principal goal is to further the clients' interests of privacy and freedom of choice in connection with the movement of their Registered Representatives ('RR') between the firms."[1]

---

[1] http://www.thebrokerprotocol.com/index.php/authors/read-the-protocol

14. The Protocol further states: "If departing RRs and their new firm follow this protocol, neither the departing RR nor the firm that he or she joins would have any monetary or other liability to the firm that the RR left by reason of the RR taking the information identified below or the solicitation of the clients serviced by the RR at his or her prior firm. . . . The signatories to this protocol agree to implement and adhere to it in good faith."

***After Plaintiffs Join Wells Fargo, Lewis Is Employed Under the Protocol, and Both Plaintiffs Are Forced to Sign Overly Broad and Unenforceable Employment Agreements.***

15. Shortly after Lewis joined Wells Fargo, the firm became a member of the Protocol. Thereafter, Lewis expended substantial efforts to serve her clients and develop new business with the knowledge, understanding, and expectation that, as a registered representative employed by Wells Fargo, the Protocol applied to her and would continue to apply to her in the future.

16. When Plaintiffs joined Wells Fargo, they were forced to sign several employment and other agreements as a condition of their employment. These agreements purport to define Wells Fargo's "trade secrets" to include, among other things, customer lists and the names, addresses, telephone numbers, and assets and obligations carried in the accounts of Wells Fargo customers.

17. Wells Fargo's purported definition of a "trade secret" is overly broad and includes information that does not constitute a legally protectable trade secret.

18. Wells Fargo's agreements also contain an "unfair competition" provision that purports to prohibit departing financial advisers from soliciting any Wells Fargo customers who they serviced, or whose names became known to them, while in the employ of Wells Fargo or as the result of their employment with Wells Fargo.

19. This provision further defines solicitation as the initiation of any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Wells Fargo

or any of its affiliates is engaged, and purports to prohibit legally protected activity, including Plaintiffs' right to announce their new employment to their clients and work with clients who choose to transition their assets and accounts to AdvicePeriod.

20. During the time period in which Wells Fargo Bank registered representatives were included as part of the Protocol, including the majority of the time Plaintiff Lewis was employed at the firm, Wells Fargo did not attempt to enforce these contractual provisions when advisers left the firm pursuant to the Protocol.

21. While at Wells Fargo, Plaintiffs expended substantial independent effort to grow their business and service their existing clients. Many of Plaintiffs' clients have been with them many years, prior to their joining Wells Fargo, and have become their personal friends. Plaintiffs have put forth significant time and effort in developing and growing their book of business, both before and during their Wells Fargo employment.

***Wells Fargo Issues a Notice Excluding Certain Wells Fargo Employees from the Protocol, and Other Firms that Left the Protocol Begin to Sue Departing Advisers.***

22. Beginning in 2017, many large Wall Street firms started leaving the Broker Protocol, including Morgan Stanley, UBS, and Citibank.

23. On a similar note, on March 1, 2018, Wells Fargo issued a notice stating that certain registered representatives employed in the Wealth Management group of Wells Fargo Bank, N.A. were no longer subject to the Protocol, including those employees with the title of Wealth Advisor (which was Lewis's title at Wells Fargo). Wells Fargo's right to unilaterally limit the Protocol's application to certain employees who had the understanding that the Protocol applied to them is tenuous at best. Nevertheless, since this notice, Wells Fargo has been aggressively harassing departing bank employees about not being subject to the Protocol.

24. After firms left the Protocol, they began initiating a rash of lawsuits against departing financial advisers seeking to obtain temporary restraining orders, damages, and other emergency injunctive relief against them.[2]

***Plaintiffs Leave Wells Fargo for AdvicePeriod.***

25. By late 2018, Plaintiffs had grown unhappy with their business relationship with Wells Fargo given the increasing number of scandals the firm was facing and the pressure they were under as a result.[3]

26. As such, on January 28, 2019, Plaintiffs Lewis and Goldenhar voluntarily resigned from Wells Fargo. Plaintiffs endeavored to work with Wells Fargo to facilitate an amicable separation from the firm. As part of their resignation, Plaintiffs deleted the Wells Fargo related applications from their mobile phones, and neither Lewis nor Goldenhar are in possession of any Wells Fargo client files or client documents.

27. Lewis and Goldenhar are now in the process of transitioning their business to AdvicePeriod. Lewis and Goldenhar, through years of servicing their clients, have knowledge of certain of their clients' basic contact information, including their clients' names. Lewis and Goldenhar intend to announce their new affiliation with AdvicePeriod to their clients by locating their contact information through publicly available sources.

28. In light of Wells Fargo's abrupt limitation of the Protocol, its threat to enforce the confidentiality, non-solicitation, and other illegal and unenforceable provisions in its employment agreements, and the string of aggressive lawsuits that firms like and including Wells Fargo have in fact filed against its former employees

---

[2] *See, e.g.*, https://www.investmentnews.com/article/20180302/FREE/180309975/ex-morgan-stanley-ubs-advisers-prevail-in-tro-claims (last visited January 25, 2019).

[3] *See, e.g.*, https://money.cnn.com/2018/04/24/news/companies/wells-fargo-timeline-shareholders/index.html (last visited January 25, 2019).

and financial advisers, Plaintiffs face the real and imminent risk that Wells Fargo will seek an improper temporary restraining order or other injunctive relief against them and otherwise stifle Plaintiffs' ability to engage in their lawful business and profession.

## FIRST CLAIM FOR RELIEF

### (For Declaratory Judgment as to 18 U.S.C. § 1836)

29. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

30. An actual controversy exists between Plaintiffs and Defendant. Plaintiffs contend that their knowledge and/or possession of basic client contact information, and their use of that information to contact clients and announce Plaintiffs' new affiliation with AdvicePeriod: (1) does not constitute a misappropriation of Defendant's trade secrets or violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) does not constitute a breach any enforceable provision of Plaintiffs' agreements with Defendant; (3) does not constitute unfair competition; and (4) does not otherwise give rise to any claim that would entitle Defendant to obtain a temporary restraining order or preliminary or permanent injunctive relief against Plaintiffs.

31. Therefore, Plaintiffs seek a declaration from the Court holding that:

    a. Plaintiffs have not misappropriated any of Defendant's protectable trade secrets or violated the Defend Trade Secrets Act;

    b. Plaintiffs have not breached any enforceable provision of Plaintiffs' agreements with Defendant and that any provisions of any agreements Defendant may rely upon in seeking to prevent Plaintiffs from using any client contact information are invalid and unenforceable;

    c. Defendant has no claims against Plaintiffs arising out of Plaintiffs' departure from Wells Fargo and affiliation with AdvicePeriod; and

    d. Defendant is not entitled to a temporary restraining order, preliminary injunction, permanent injunction, or other injunctive or

8
COMPLAINT

monetary relief against Plaintiffs related to their transition to AdvicePeriod and announcement to their clients of their new affiliation.

## SECOND CLAIM FOR RELIEF

**(For Declaratory Judgment as to Defendant's Employment Agreements)**

32. Plaintiffs restate and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

33. An actual controversy exists between Plaintiffs and Defendant. Plaintiffs contend that the employment agreements Plaintiffs were required to sign as a condition of their employment with Wells Fargo are, in whole or in part, illegal, void, and unenforceable as against California public policy. Enforcement of those agreements will constitute, among other things, unfair business practices, illegal restrictions on trade, and unfair competition.

34. Defendant drafted the employment agreements and required Plaintiffs to sign them as a condition of their employment with Wells Fargo.

35. Therefore, Plaintiffs seek a declaration from the Court holding that:
   a. Defendant's employment agreements are illegal, unconscionable, void, and unenforceable in their entirety; or, alternatively,
   b. Those sections within Defendant's employment agreements purporting to define Defendant's trade secrets to include customer lists and basic customer contact information, and to define solicitation to include any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Wells Fargo or its affiliates is engaged, are void and unenforceable.

**PRAYER FOR RELIEF**

Plaintiffs therefore pray for relief as follows:

1. For a declaratory judgment and temporary injunctive order finding that:
   a. Plaintiffs have not misappropriated any of Defendant's protectable trade secrets or violated the Defend Trade Secrets Act;
   b. Plaintiffs have not breached any enforceable provision of Plaintiffs' agreements with Defendant and that any provisions of any agreements Defendant may rely upon in seeking to prevent Plaintiffs from using client contact information to announce Plaintiffs' affiliation with AdvicePeriod are invalid and unenforceable;
   c. Defendant has no claims against Plaintiffs arising out of Plaintiffs' departure from Wells Fargo and affiliation with AdvicePeriod;
   d. Defendant is not entitled to a temporary restraining order, preliminary injunction, permanent injunction, or other injunctive or monetary relief against Plaintiffs related to their transition to AdvicePeriod and announcement of their new affiliation to clients;
   e. Defendant's employment agreements are illegal, unconscionable, void, and unenforceable in their entirety; and, alternatively,
   f. Those sections within Defendant's employment agreements purporting to define Defendant's trade secrets to include customer lists and basic customer contact information, and to define solicitation to include any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Wells Fargo or its affiliates is engaged, are void and unenforceable.
2. For compensatory damages in an amount according to proof;
3. For pre-judgment interest and post-judgment interest at the statutory rate;

4. For attorney's fees and costs of suit; and

5. For such other relief as the Court deems just and proper.


DATED: January 29, 2019        Submitted by,

MACKANESS & IDETA, LLP
JESSICA L. MACKANESS, ESQ.
ERIK M. IDETA, ESQ.


 /s/ Jessica L. Mackaness


3702 4th Ave, 2nd Floor
San Diego, CA 92103
Telephone: (619) 359-8700
Facsimile:  (619) 359-8719

*Attorneys for Plaintiffs*
*Jackie Lewis and Ryan Goldenhar*